IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GARY CREMEENS, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| v. | )  CASE NO. 2:08-cv-546-MEF |
| | ) |
| CITY OF MONTGOMERY, | )     (WO - PUBLISH) |
| | ) |
|     DEFENDANT. | ) |

## MEMORANDUM OPINION AND ORDER

Gary Cremeens ("Cremeens"), an Arson Investigator for the City of Montgomery ("Montgomery") Fire Department, brings this collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, (hereinafter "FLSA") seeking overtime compensation to which he claims entitlement. Specifically, Cremeens contends that he is entitled to be compensated as a law enforcement officer rather than as a firefighter. This cause is now before the Court on the Motion for Summary Judgment (Doc. # 36) filed by Montgomery on July 10, 2009. For the reasons set forth in this Memorandum Opinion and Order, the motion is due to be GRANTED.

## JURISDICTION AND VENUE

Jurisdiction over the claims in this lawsuit is proper under 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 216(b).[1] The parties do not contest personal jurisdiction or venue,

---

[1] Although Cremeens invokes this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331, the Court also plainly has subject matter jurisdiction pursuant to 29 U.S.C.

and the Court finds adequate allegations in support of both.

## PROCEDURAL BACKGROUND

On July 11, 2008, Cremeens filed suit against Montgomery. He alleged that at all times relevant to the suit, Montgomery had employed him as an "Arson Investigator" for the Montgomery Fire/Rescue Bureau of Investigations. He further alleged that Montgomery had failed to pay mandatory overtime compensation in compliance with 29 U.S.C. § 207. In August of 2008, Cremeen moved to have the class conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b). Over Montgomery's objections, this motion was granted. Several other individuals Montgomery employed as Arson Investigators filed notices of their consent to became party plaintiffs and joined this lawsuit. Accordingly, the Court will refer in this opinion to the claims and contentions of all plaintiffs collectively and refer to those individuals as "Plaintiffs."

Montgomery extended an offer of judgment to Plaintiffs with respect to a subset of their claims in late June of 2009. This resulted in an agreed settlement of those claims and a Joint Motion for Approval of Partial Settlement. The Court granted that motion on July 23, 2009.

Montgomery has filed a motion for summary judgment in which its seeks judgment as a matter of law on the Plaintiffs' remaining claims to overtime compensation. Plaintiffs oppose that motion. The Court has carefully considered all submissions in support of and

---

§ 216(b) as well.

in opposition to the motion, as well as, the applicable law.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the

other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## NARRATIVE STATEMENT OF FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the plaintiffs, the non-moving parties, establish the following relevant facts:

The Montgomery Fire Department is subdivided into several operating divisions. Those divisions include the following: Administrative Division, Training Division, Special Operations Division, Fire Suppression Division, the Medic Division, and the Fire Investigations Division.[2] Assistant Fire Chief William Davis ("Davis") is currently in charge of the Fire Investigations Division. Cremeens is employed in the Fire Investigation Division as a Fire Investigator. His fellow Fire Investigators[3] have all filed their consent to be made

---

[2] The Fire Investigations Division has also been known as the Arson Division at various times.

[3] Those opt-in plaintiffs are: Larry Coleman, Doyle Campbell, Larry McNeill, Mark Williams, William "Buddy" Fulton, Darryl Bryant, and Cecil Guthrie.

party plaintiffs in this action.

Fire Investigators, who have also been known as Arson Investigators, are employed in the Fire Investigation Division. Like firefighters employed in the Fire Suppression division, Fire Investigators work shifts of twenty-four continuous hours with intervals of forty-eight hours between shifts. When they are working a shift, Fire Investigators are required to remain at the station on call and to respond to any fire calls to which they may be dispatched. They are free to occupy themselves as they wish from 6:00 p.m. until 8:00 a.m. on each of their on-duty shifts, except once every two weeks they are required to perform nightclub inspections after 10:00 p.m.[4] Like other employees of the Fire Department working in other divisions, but holding similar rank and experience, Fire Investigators hold the formal job title of Fire Lieutenant. At any time, the Fire Chief has the ability to reassign a Fire Inspector to work in another division such as the Fire Suppression Division or the Medic Division.

Beginning in 2005, the Montgomery Fire Department instituted a rule that employees must attain the rank of Fire Lieutenant in order to gain an assignment to the Fire Investigation Division. All firefighters work in the Fire Suppression Division, usually for a period of several years, to obtain the rank of Fire Lieutenant before seeking the additional

---

[4] The purpose of the nightclub inspections is to prevent fires in nightclubs and to ensure the protection of patrons and neighbors of nightclubs. During these inspections, Fire Investigators check the emergency exits to make sure that they are unobstructed, ascertain that the exit markings are properly visible, enforce the occupancy limits, and otherwise check for hazards in the nightclub.

specialized training required to work as a Fire Investigator. Not surprisingly, Cremeens and the opt-in plaintiffs worked in the Fire Suppression Division prior to being assigned to the Fire Investigation Division.

Fire Investigators receive training in both fire suppression and law enforcement. All Fire Investigators are required to graduate from the Montgomery Fire Academy, to obtain a Firefighter I/II certificate from the Alabama Fire College, and to complete an EMT basic certification. Additionally, Fire Investigators are required to attend and graduate from a forty-five hour Fire Investigator class at the Alabama Fire College and a Fire Investigation class at the National Fire Academy. Furthermore, Fire Investigators are required to have attended and graduated from the Montgomery Police Academy and to have obtained certification from the Alabama Peace Officer's Standards Training Commission. Fire Investigators have full authority to make arrests without calling the Montgomery Police Department. In order to maintain their assignment to the Fire Investigations Division, Fire Investigators are required to attend monthly fire suppression drills at the Montgomery Fire Academy[5] and to maintain their certification from the Alabama Peace Officer's Standards Training Commission, which requires that they complete 12 hours of continuing education

---

[5] The requirement that all Fire Investigators attend monthly fire suppression drills was added in April of 2008. At that same time, the Montgomery Fire Department also began to require Fire Investigators to participate in the continuing training program which requires that they serve a minimum of 60 hours per year in a fire suppression company or 30 hours per year in a fire suppression company and 30 hours per year on a medic truck if they are paramedic qualified.

and that they pass a firearms qualification each year.  In addition to standard firefighting gear, Fire Inspectors are also equipped with special items pertinent to their law enforcement function.

Davis admits that the majority of Fire Investigator's duties are law enforcement duties and that the majority of time in a Fire Investigator's shift is spent doing investigative work, most of which is law enforcement work.  He admits that the Fire Investigators are a law enforcement team.  It is also undisputed, however, that Fire Investigators receive the same firefighter training relating to necessary and proper procedures for attacking and extinguishing fires that is required of members of the Suppression Division.  Moreover, it is undisputed that Fire Investigators are subject to being directed to engage in fire suppression activities by either a superior officer or an on-scene fire commander and would be disciplined if they failed to comply with such direction.  Indeed, Fire Investigators must respond to certain types of fires.  They have a responsibility to engage in fire suppression activities in certain emergency situations.  Manpower shortages in the Fire Suppression Division have resulted in temporary assignment of Fire Investigators to work in Fire Suppression on occasion.

Montgomery has adopted a fourteen day work period in which pay, overtime, and compensatory time is calculated.  For at least the last three years, Montgomery has paid its Fire Investigators at a rate of one and one half times the regular rate at which they are employed for all hours in excess 106 hours per two-week pay period.

7

## DISCUSSION

The FLSA governs minimum wage and overtime requirements for employees covered under the act. The FLSA requires overtime pay to covered employees at the rate of one and one half times an employee's base rate of pay for hours worked in excess of the statutorily set amount; most employees covered by the FLSA are entitled to overtime compensation for "a workweek longer than forty hours." 29 U.S.C. § 207(a)(1). Section 207(k) of the FLSA, however, provides an exemption to the strict forty hour workweek for "any employee in fire protection activities or any employee in law enforcement activities" in certain circumstances. 29 U.S.C. § 207(k). This exemption allows public agencies employing persons engaged in fire protection activities or law enforcement activities to calculate an employee's hours for overtime purposes according to work periods of twenty-eight days rather than on a weekly basis and sets a calculable threshold for the commencement of compensation at an overtime rate. *See* 29 U.S.C. § 207(k).

Under the Department of Labor promulgated regulations, employees engaged in fire protection activities must be given overtime pay for all time worked beyond 106 hours each fourteen days. 29 C.F.R. § 553.230(c). However, these same regulations provide that employees engaged in law enforcement activities must be given overtime pay for all time worked beyond 86 hours each fourteen days. 29 C.F.R. § 553.230(c). The difference in the number of hours which must be worked before an employee must be given overtime pay leads Cremeens to contend that he and the other Fire Investigators are engaged in law

enforcement activities and have consequently been underpaid because Montgomery has compensated them as if they were engaged in fire protection activities.

Prior to 1999, this section of the FLSA did not itself define the meaning of several of the key terms used in it such as "engaged in fire protection" or "engaged in law enforcement activities." The Department of Labor filed this void with various regulations defining fire protection or law enforcement activities; addressing the proper classification of employees who engaged in fire protection or law enforcement activities, but who also engaged in other work during slack times; and explaining how to properly classify employees who engaged in both fire protection and law enforcement activities. *See, e.g.,* 29 C.F.R.§§ 553.110, 553.211, 553.212, 553.213.

In 1999, Congress amended the FLSA to add a statutory definition of "employee in fire protection activities." This amendment added 29 U.S.C. § 203(y) which currently states:

> "Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who –
>
>   (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and
>
>   (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

29 U.S.C. 203(y). Unfortunately, the Department of Labor has not revised its regulations since this key legislative change despite the obvious conflict between the regulations and the

9

new statutory definition. *See, e.g., McGavock v. City of Water Valley, Miss.*, 452 F.3d 423, 426 (5th Cir. 2006). Consequently, a number of courts, including the Eleventh Circuit Court of Appeals, have been called upon to address this tension in the law.

In *Huff v. Dekalb County, Ga.*, 516 F.3d 1273 (11th Cir. 2008), a group of current and former firefighter/paramedics and fire medics employed by a county fire department sued the county and its fire chief alleging failure to pay overtime wages in violation of the FLSA. The Eleventh Circuit affirmed the district court's decision to grant the fire department's motion for summary judgment because it properly found that the plaintiffs met the definition of employees in fire protection activities as defined in 29 U.S.C. § 203(y). *Id.* at 1277-82. In reaching this holding, the Eleventh Circuit specifically rejected the plaintiffs' urging to apply the regulatory definition of employee engaged in fire protection activities set forth at 29 C.F.R. § 553.210 and the "80/20 Rule" set forth at 29 C.F.R. § 553.212, which provided that otherwise exempt employees may not be considered employees engaged in fire protection activities if they spend more than twenty percent of their working time engaged in activities not related to fire suppression. *Id.* at 1277-78. Following the lead of the Fifth Circuit Court of Appeals in *McGavock*, the Eleventh Circuit held that the enactment of § 203(y) rendered both the regulatory definition set forth at 29 C.F.R. § 553.210 and its "subsidiary regulation" (the "80/20 Rule" set forth at 29 C.F.R. § 553.212) obsolete and without effect. *Id.* at 1278. Thus, the only relevant inquiry was whether the plaintiffs met the statutory definition set forth in § 203(y). *Id.* Despite the fact that these employees rarely or in some cases never

10

engaged in fire suppression, the Court found that they had been properly compensated because they nevertheless met the criteria set forth in § 203(y). *Id.* at 1278-1282. In less than a year, the Eleventh Circuit again decided a case raising these issues and once again it held that "the congressional enactment of § 203(y) in 1999 rendered § 553.212 and the 80/20 Rule in § 553.212 obsolete." *Gonzalez v. City of Deerfield Beach, Fla.*, 549 F.3d 1331, 1336 (11th Cir. 2008).

The instant case presents an apparent question of first impression regarding the continued vitality of another of the "subsidiary regulations" promulgated by the Department of Labor prior to the Congressional enactment of § 203(y). Specifically, the regulation at issue in this action is the one which addresses "dual assignment." *See* 29 C.F.R. § 553.213. That regulation recognizes that the maximum hour standards under § 207(k) are different for employees engaged in fire protection and for employees engaged in law enforcement and provides that

> [f]or those employees who perform both fire protection and law enforcement activities, the applicable standard is the one which applies to the activity in which the employee spends the majority of work time during the work period.

29 C.F.R. § 553.213(b). Thus, this regulation recognizes what might be called a 51% rule for deciding whether to treat such dual employees under the maximum hour standards for employees engaged in fire protection or those for employees engaged in law enforcement.

Cremeens argues for the application of 29 C.F.R. § 553.213(b) to this case and a finding that because the majority of his time is spent working in law enforcement activities

11

he should be subject to the maximum hour standards for employees engaged in law enforcement. Had Congress not enacted § 203(y) such an argument would clearly be a persuasive one. In the wake of the enactment of § 203(y), the Court is compelled to acknowledge the inherent conflict between the statutory definition of "employee in fire protection activities" and the dual employee rule set forth in 29 C.F.R. § 553.213(b). It is clear that § 203(y) supplants the definition set forth in § 553.210. Indeed, as previously discussed, the Eleventh Circuit and other courts have previously recognized this. Furthermore, it is clear that the rule in this circuit is that the subsidiary regulation (§ 553.212) setting forth the so called 80/20 rule is obsolete because it has also been supplanted by the definition set forth in § 203(y). Now, this Court faces the question of whether § 553.213 is also a regulation that is subsidiary to § 553.210 and obsolete because it is in conflict with the statutory definition provided by § 203(y). The Court finds that is in fact the case. The dual assignment regulation at issue specifically invokes the definitions set forth in §§ 553.210 and 553.211. *See* 29 C.F.R. § 553.213(a). Furthermore, just as the 80/20 rule further refined the definition of an employee engaged in fire protection activities, it is necessary to recognize that § 533.213(b) also further refined that definition by excluding persons who don't spend the majority of their time in that capacity because of their additional law enforcement responsibilities. Certainly, Congress knew how to include such limitations as these in drafting the definition of "employee in fire protection activities" to be included in the statute. Rather than including such limitations, however, Congress elected instead to cast a broader

12

net. The inherent conflict created by this election compels the finding that, like §§ 553.210 and 553.212, § 553.213(b) is also obsolete because the new statutory definition has supplanted it.

Indeed, this case provides a nice illustration of why there exists an inherent conflict between § 553.213(b) and § 203(y). There is no real dispute in this case that Cremeens and the other Fire Investigators satisfy § 203(y)'s statutory definition of employees in fire protection activities; nevertheless, it is also true that it cannot be said that they spend the majority of their time in fire protection activities. If this Court were to apply § 553.213(b), it would be compelled to find that despite meeting the statutory definition they were not engaged in fire protection activities because the definition had been further narrowed by the Department of Labor regulations. The regulations may not conflict with or supercede the expressed Congressional intention in statute in furtherance of which they were promulgated.

Therefore, the Court holds that the dispositive issue before it is whether Cremeens and the opt-in plaintiffs meet the definition set forth in § 203(y). If they do, the Court is compelled to find that they have been properly compensated under the FLSA now that Montgomery has corrected its previous error and paid them overtime paid for hours worked in excess of 106 hours every 14 days.[6] The Court begins by noting that nowhere has Cremeens contended that he and the other Fire Investigators do not meet the definition set

---

[6] *See* Joint Motion for Approval of Partial Settlement (Doc. # 38) and Order Approving Partial Settlement (Doc. # 41).

forth in § 203(y). Indeed, the undisputed evidence before this Court, even when viewed in the light most favorable to Cremeens, establishes that Montgomery's Fire Investigators do meet every aspect of the statutory definition of "employee in fire protection activities" set forth in 29 U.S.C. § 203(y). Because they are employees engaged in fire protection activities, the maximum hour standards applicable to them are set forth in 29 C.F.R. § 553.230(a). It is undisputed that they have now been compensated in accordance with those standards. For this reason, the Court finds that the motion for summary judgment is due to be GRANTED and Montgomery is entitled to judgment as a matter of law.

## CONCLUSION

Having reviewed and applied the relevant law to the undisputed facts of this case, the Court is persuaded that no genuine issue exists as to any material fact. Furthermore, the Court finds that Montgomery is entitled to judgment as a matter of law on all of Plaintiffs' remaining claims. Accordingly, it is hereby ORDERED as follows:

(1) The Motion for Summary Judgment (Doc. # 36) filed by Defendant on July 10, 2009 is GRANTED.

(2) The pretrial conference and trial in this cause are hereby CANCELLED.

(3) A separate judgment will be entered in Defendant's favor taxing costs against Plaintiffs.

Done this the 7th day of October, 2009.

                                                    /s/ Mark E. Fuller
                                        CHIEF UNITED STATES DISTRICT JUDGE